UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Andy Trinity Cook, | ) | C.A. No. 9:23-cv-02919-SAL-MHC |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | |
| | ) | |
| Sgt. M. Jinks, Ofc. C. Eagan, and Nurse L. Bell, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the Court is a Motion for Summary Judgment ("Motion") filed by Defendants. ECF No. 34. Plaintiff filed a Response in Opposition to the Motion, ECF No. 39, and the Motion is ripe for review.[1]

## **BACKGROUND**

Plaintiff brings this pro se action pursuant to 42 U.S.C. § 1983 against Defendants in their individual and official capacities, alleging violations of his civil rights while a pretrial detainee at the York County Detention Center ("YCDC"). Specifically, in his Complaint, Plaintiff alleges that Defendants were deliberately indifferent to his medical needs. ECF No. 1 at 5–7. Plaintiff requests one hundred and fifty thousand dollars as compensatory damages. *Id.* at 9. Plaintiff also requests injunctive relief in the form of policy changes for YCDC. *Id.* at 7.[2]

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2) (D.S.C.). This Report and Recommendation is entered for review by the District Judge.

[2] Plaintiff does not request injunctive relief in the "Relief" section of the form complaint, *see* ECF No. 1 at 9, but he does in the handwritten section of the Complaint, *see id.* at 7. Defendants do not

Plaintiff was booked into YCDC on August 30, 2022. *Id.* at 5; ECF No. 34-1 at 1. At some point after being booked, Plaintiff alleges he began vomiting blood. ECF No. 1 at 5. Plaintiff further alleges that Defendant Jinks came to Plaintiff's cell after being alerted to the issue by the other inmates in Plaintiff's cell. *Id.* According to Plaintiff, Defendant Jinks put Plaintiff in a cell with a camera but did not provide medical attention to Plaintiff at that point. *Id.* Next, Plaintiff alleges that he was moved to a classification pod, where he was then observed by Defendant Eagan, whom Plaintiff informed that he was vomiting blood. *Id.* Plaintiff states that Defendant Eagan placed him on sick call, though Plaintiff asserts that "placing [him] on sick call is not the correct professional procedure to perform." *Id.* Plaintiff then alleges that Defendant Bell arrived to perform her duties and provided Plaintiff a TB shot and checked his blood pressure. *Id.* After these visits, Plaintiff alleges that "[s]ometime in the early morning hours of Sept. 1st, 2022," he tried to stand to relieve himself, lost consciousness, and fell and hit his head on the toilet, which caused a gash above his right eye that would later require stitches. *Id.* at 6. Plaintiff was taken to Piedmont Medical Center for care and was kept there for seven days. *Id.* at 5–6. Plaintiff asserts he was unable to file a grievance for the incident, as he was told he did not do so within the proper period of seventy-two hours after the incident occurred.[3]

According to Defendants, Plaintiff was booked at YCDC while exhibiting withdrawal symptoms from narcotics. ECF No. 34-1 at 4–7. Plaintiff was prescribed Vistaril to assist with his withdrawal symptoms, as well as Zofran to assist with the nausea. *Id.* at 4; ECF Nos. 34-7 at 6–8;

---

address Plaintiff's claim for injunctive relief. In any case, based on the undersigned's review of Plaintiff's claims, Plaintiff fails to state a cognizable constitutional violation for which injunctive relief could be awarded.

[3] Plaintiff includes grievance numbers in his complaint. *See* ECF No. 1 at 11. Plaintiff contends that he was improperly prevented from filing a grievance because he was in the hospital during the time allotted to do so. Because Defendants do not assert that Plaintiff failed to exhaust his administrative remedies, the dispute need not be addressed.

34-6 at 2. Defendants assert that "Plaintiff received copious amounts of medical attention at YCDC[.]" ECF No. 34-1 at 3.

In an affidavit, Defendant Jinks avers that he was working as a Booking Officer on the night shift. ECF No. 34-3 at 1. Defendant Jinks asserts that Plaintiff was already in the booking area when Defendant Jinks arrived for his shift on August 30, 2022, and that Defendant Jinks was aware that Plaintiff had, at that point, already been evaluated by medical staff, who had "initiated a withdrawal protocol due to Plaintiff's admission that he was a user of Fentanyl and/or Heroine [sic]." *Id.* at 2. Defendant Jinks further avers that he moved Plaintiff to an observation cell based on Plaintiff's complaints of nausea and vomiting, and that he alerted his supervisors to the same. *Id.* After moving Plaintiff to the observation cell, Defendant Jinks had no further interactions with him during his August to November 2022 period of detention. *Id.*

Defendant Eagan testifies in her affidavit that she was working as a housing unit officer at YCDC and recalls the period of detention at issue. ECF No. 34-4 at 1–2. Defendant Eagan recalls that Plaintiff was already on a withdrawal protocol and that Plaintiff complained of having nausea and vomiting related to his withdrawals. *Id.* at 2. Because Defendant Eagan did not observe any bleeding or serious injuries and Plaintiff was already on a withdrawal protocol, Defendant Eagan assured Plaintiff he would be added to the 7:00 A.M. sick call but did not provide further medical assistance and did not have any further interactions with Plaintiff before the conclusion of her shift. *Id.*

Defendant Bell, a registered nurse with over thirty years of experience, was also on duty the night of the incident and provided an affidavit stating that her only encounter with Plaintiff was at approximately 10:15 P.M. on August 31, 2022, where she performed a standard physical evaluation and documented Plaintiff's complaints of nausea. ECF Nos. 34-6 at 1–3; 34-7 at 9–10.

Defendant Bell asserts that "Plaintiff was not exhibiting any signs or symptoms, at that time, that warranted any additional, clinical interventions." *Id.* at 3. After her shift ended at 5 A.M. on September 1, 2022, Defendant Bell was contacted at approximately 6:45 A.M. regarding Plaintiff's fall and laceration, and she approved Plaintiff's transport to Piedmont Medical Center. *Id.*

## **LEGAL STANDARD**

Defendants move for summary judgment on Plaintiff's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 34. Summary judgment is appropriate if a party "shows there is no genuine dispute as to any issue of material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under the framework established in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the party seeking summary judgment shoulders the initial burden of demonstrating to the Court that there is no genuine issue of material fact. *Id.* at 323. Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324.

Under this standard, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, although the Court views all the underlying facts and inferences in the record in the light most favorable to the non-moving party, the non-moving "party nonetheless must offer some 'concrete evidence from which a reasonable juror could return a verdict in his [or her] favor.'" *Williams v. Genex Servs., LLC*, 809 F.3d 103, 109 (4th Cir. 2015) (quoting *Anderson*, 477 U.S. at 256). That is to say, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory or speculative allegations or denials, without

4

more, are insufficient to preclude the granting of the summary judgment motion. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. To survive summary judgment, the non-movant must provide evidence of every element essential to his action on which he will bear the burden of proving at a trial on the merits. *Celotex Corp.*, 477 U.S. at 322.

Additionally, pro se filings are to be "liberally construed" and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). This "[l]iberal construction of the pleadings is particularly appropriate where, as here, there is a pro se complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (citation omitted); *Williamson v. Stirling*, 912 F.3d 154, 173 (4th Cir. 2018) (noting "we are obliged to construe [a complaint's] allegations liberally and with the intent of doing justice"). However, the requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact when none exists. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.").

## **DISCUSSION**

Defendants assert that they are entitled to summary judgment because: (1) Plaintiff has failed to show a constitutional deprivation sufficient for recovery under § 1983; (2) Defendants are entitled to Eleventh Amendment immunity; (3) to the extent that Plaintiff attempts to bring

claims for medical malpractice, he failed to comply with South Carolina's Medical Malpractice Act; and (4) Defendants are entitled to qualified immunity. ECF No. 34-1 at 9–20. For the following reasons, the Court recommends granting Defendants' Motion.

**I.      Plaintiff has failed to show that Defendants were deliberately indifferent to a serious medical need.**

Plaintiff seeks monetary damages against Defendants in their individual capacities under 42 U.S.C. § 1983. To state a § 1983 claim, Plaintiff must demonstrate Defendants, acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States. 42 U.S.C. § 1983; *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001).

As a pretrial detainee,[4] to establish his claim for deliberate indifference to a serious medical need, Plaintiff must show: (1) he had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that he had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, Plaintiff was harmed. *See Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (noting abrogation of prior precedent combining the analysis of pre-trial detainees' Fourteenth Amendment claims and prisoners' Eighth Amendment deliberate

---

[4] Plaintiff brings his claims under both the Eighth and Fourteenth Amendments. *See* ECF No. 1 at 4. Because Plaintiff was a pretrial detainee, the Fourteenth Amendment, rather than the Eighth Amendment, governs his claims. However, "a pretrial detainee makes out a violation at least where 'he shows deliberate indifference to serious medical needs' under cases interpreting the Eighth Amendment." *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021); *see also Short*, 87 F.4th at 612 ("[A] pretrial detainee can still state a claim if they can meet the more demanding Eighth Amendment standard. In other words, satisfying the Eighth Amendment test remains sufficient, but is no longer necessary, for a pretrial detainee to state a claim for deliberate indifference to a serious medical need."). Additionally, cases discussing similar claims under the Eighth Amendment are instructive at least as to the objective portion of such claims. *See Whaley v. Multiple Unknown Defendants*, No. 4:22-CV-4469-JFA-TER, 2024 WL 3678458, at *5 n.4 (D.S.C. July 23, 2024).

indifference claims based on *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)), *cert. denied*, No. 23-1097, 2024 WL 2883766 (U.S. June 10, 2024).

### A. *Serious Medical Condition*

The first requirement for a deliberate indifference claim is a serious medical condition posing a substantial risk of serious harm. *Id.* at 611–12. "[A] serious . . . medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (internal citations omitted).

Here, Defendants recognize that Plaintiff was on a withdrawal protocol and was being prescribed medication for such protocol. *See, e.g.*, ECF No. 34-1 at 5. Thus, for purposes of this Motion, the undersigned treats Plaintiff's withdrawal symptoms as a serious medical need, given that it was diagnosed by a physician as requiring treatment. However, to the extent Plaintiff is alleging that Defendants failed to adequately treat or recognize any medical condition other than these withdrawal symptoms, the undisputed evidence shows only that Plaintiff fell and hit his head on September 1, 2022, ECF No. 1 at 6, and that Plaintiff was presently detoxing from fentanyl. ECF No. 31-1 at 8. The undersigned addresses Plaintiff's withdrawal symptoms as his serious medical condition for purposes of this claim.

### B. *Intentional, Knowing, or Reckless Action or Inaction*

Next, Plaintiff must show that Defendants intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk posed by Plaintiff's medical condition. *See Short*, 87 F.4th at 611. In his Complaint, Plaintiff details the actions taken by Defendants, such as Defendant Jinks' placing Plaintiff in an observation cell, Defendant Eagan's placing Plaintiff on the sick call list, and Defendant Bell's provision of a TB shot and recording Plaintiff's blood pressure, ECF

No. 1 at 5–7. While Plaintiff may disagree with the actions of Defendants, *see* ECF No. 1 at 6–7 ("I feel like [Defendants] failed . . . to take my situation seriously and should of [sic] gotten me the Medical Attention I deserved."), Plaintiff does not assert that the Defendants intentionally, knowingly or even recklessly disregarded the risk of harm by failing to act appropriately, nor has he pointed to any evidence otherwise.

Plaintiff himself admits that Defendants provided care to him during the period of August 30 through September 1 of 2022. Indeed, the evidence reflects that Plaintiff was seen by YCDC staff on numerous occasions. *See* ECF No. 34-7 at 6–10. Upon intake to YCDC, Plaintiff was visited no fewer than three separate times by three separate medical personnel. *See id.* Plaintiff appears to have first been seen by Nurse Michaela Barnette at 9 A.M. on August 30, 2022, the date Plaintiff was booked into YCDC. *Id.* at 6; ECF No. 34-1 at 4. At that time, Plaintiff complained to Nurse Barnette of withdrawal symptoms from heroin use but denied symptoms of nausea, vomiting, or diarrhea. ECF No. 34-7 at 6. Nurse Barnette took a urine sample, in which Plaintiff tested positive for amphetamines, opioids, and methamphetamines. *Id.*; ECF No. 34-1 at 4. Plaintiff was prescribed Vistaril for his withdrawal symptoms at that time. ECF No. 34-1 at 4.

Plaintiff's second visit occurred in the afternoon of the next day, when Nurse Jean Farkas noted that Plaintiff was in his cell and complained of nausea and vomiting. *Id.*; ECF No. 34-7 at 8. Nurse Farkas noted emesis in the toilet and confirmed with Plaintiff that he was on "Vistaril Protocol for the withdrawals[,] and he said yes." ECF No. 34-7 at 8. Nurse Farkas ordered Zofran to assist Plaintiff with the nausea. *Id.*

Later that evening, Defendant Bell visited Plaintiff and recorded his vital signs as well as his allergies, to be reported to the food services division to assist with compliance with Plaintiff's dietary needs. ECF Nos. 34-1 at 5; 34-7 at 9–10. Defendant Bell noted Plaintiff's withdrawal

protocol as well as his difficulty keeping food down. ECF No. 34-7 at 10. While Plaintiff appears to have requested nutritional support, Defendant Bell noted that because Plaintiff's current BMI was healthy, nutritional support did not appear necessary at the time of the request, but that the situation would be monitored. *Id.*

Ultimately, Plaintiff's complaint is that the choices made regarding his treatment were "not the correct professional procedure to perform," ECF No. 1 at 5. Plaintiff's complaint amounts to a disagreement over the proper course of his medical care, which falls short of showing deliberate indifference. *See Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (noting that the Fourth Circuit has consistently found disagreements between an inmate and a physician over the inmate's proper medical care "fall short of showing deliberate indifference"); *see also Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (holding that "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim for purposes of 42 U.S.C. § 1983 and ultimately affirming the order of summary judgment in favor of the doctor).

C. *Knowledge of Condition and Risk of Harm*

Based on the Fourth's Circuit's recent revision to the deliberate indifference test, "[t]he plaintiff no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Short*, 87 F.4th at 611. It is now sufficient that the plaintiff show that a defendant's action was "objectively unreasonable." *Id.* Nonetheless, it is still insufficient for a plaintiff to allege negligence or an accidental failure to do right by the detainee. *Id.*

Plaintiff has failed to show that any Defendant's actions were objectively unreasonable. *See Short*, 87 F.4th at 611. The evidence shows that Defendants were aware of Plaintiff's

9

condition, in that they all were aware he was undergoing withdrawal protocols. *See, e.g.*, ECF Nos. 34-1 at 5; 34-5 at 2 (Defendant Eagan noting that Plaintiff was undergoing "severe withdraws [sic]"). It is reasonable to expect a person suffering from withdrawal symptoms to have bouts of nausea and vomiting. The evidence also shows that Defendants were addressing Plaintiff's withdrawal symptoms through observation and medication. S*ee* ECF Nos. 34-3 at 2; 34-4 at 2; 34-6 at 3. Plaintiff has not shown or otherwise pointed to any evidence in the record establishing that any Defendant's actions under these circumstances was objectively unreasonable, nor that they posed an unjustifiably high risk of harm.

At most Plaintiff's allegations may amount to medical negligence, which falls short of violating Plaintiff's Fourteenth Amendment rights. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *see also Young v. City of Mount Ranier*, 238 F.3d 567, 575–76 (4th Cir. 2001) (noting merely negligent behaviors do not meet the subjective mens rea requirement of deliberate indifference); *Grayson v. Peed*, 195 F.3d 692, 696 (4th Cir. 1999) (noting deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety"). Even though the Fourth Circuit has adjusted the deliberate indifference test, "[n]egligence was not enough before, and it is not enough now." *Short*, 87 F.4th at 612 (internal citations omitted).

Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's claim for deliberate indifference under 42 U.S.C. § 1983 should be granted.

## II.    Defendants are entitled to Eleventh Amendment immunity in their official capacities.

Defendants are being sued in their official and individual capacities. As to Plaintiff's claims for monetary relief against Defendants in their official capacities, they are entitled to Eleventh

Amendment immunity.[5] *See McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014) ("Our case law is clear that 'because of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte*.'" (citations omitted)). Under the Eleventh Amendment, federal courts are barred from hearing claims for monetary damages against a state or its agents, instrumentalities, and employees, unless the state has consented to the suit. *Fauconier v. Clarke*, 966 F.3d 265, 279 (4th Cir. 2020); *see Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) ("It has long been settled that [the Eleventh Amendment's] reference to 'actions against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). Unless a state has consented to suit or Congress has waived a state's immunity pursuant to the Fourteenth Amendment, a state (and its agencies) may not be sued in federal or state court. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Congress has not abrogated the states' sovereign immunity under § 1983, *Quern v. Jordan*, 440 U.S. 332, 343 (1979), and South Carolina has not consented to suit in federal district court. S.C. Code Ann. § 15-78-20(e).

Here, at all times relevant to Plaintiff's Complaint, Defendants were agents or employees of YCDC. ECF Nos. 34-3 at 1; 34-4 at 1; 34-6 at 1. A county detention center is under the control of the county sheriff's office, *see* S.C. Code Ann. § 24-5-10, and is considered a state agency. *See Williams v. Dorchester Cty. Det. Ctr.*, 987 F. Supp. 2d 690, 692–93 (D.S.C. 2013); *Gulledge v.*

---

[5] Eleventh Amendment immunity does not bar claims for prospective injunctive relief pursuant to *Ex parte Young*, 209 U.S. 123 (1908). Under *Ex parte Young*, "a federal court [is permitted] to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010). It appears that Plaintiff may be seeking prospective injunctive relief regarding prison policies, in that Plaintiff requests an "Injunction for YCDC to make changes so this does not happen in the future." ECF No. 1 at 7. As noted above, because Plaintiff has failed to show a genuine dispute of material fact as to any underlying constitutional claim, Defendants are entitled to summary judgment on any purported claim for prospective injunctive relief.

11

*Smart*, 691 F. Supp. 947, 954–55 (D.S.C. 1988). Therefore, Defendants are state agents and enjoy Eleventh Amendment immunity when sued in their official capacities in federal court. *See Anderson v. York Cty's Sheriff's Dep't*, No. CA 3:10-2481-CMC-JRM, 2011 WL 586071, at *2 (D.S.C. Jan. 19, 2011) ("As an agency of the state, the York County Sheriff's Department is immune from suit under the Eleventh Amendment to the United States Constitution which divests this Court of jurisdiction to entertain a suit brought against the State of South Carolina or its integral parts."), *report and recommendation adopted sub nom. Anderson v. York Cnty. Sheriff's Dep't*, No. CA 3:10-2481-CMC-JRM, 2011 WL 586068 (D.S.C. Feb. 9, 2011). Accordingly, Defendants, in their official capacities,[6] are entitled to summary judgment.

### III. To the extent Plaintiff asserts a claim for medical malpractice, he has not met his burden of proof.

To the extent Plaintiff is attempting to assert a cause of action for medical malpractice, Plaintiff's Complaint fails. To establish liability in a medical malpractice case under South Carolina law, a plaintiff must establish the following elements: (1) the recognized and generally accepted standards, practices, and procedures in the community that would be exercised by competent physicians in the same specialty under similar circumstances; (2) the physicians or hospital personnel in question negligently deviated from the generally accepted standards, practices, and procedures; (3) such negligent deviation from the generally accepted standards, practices, and procedures was a proximate cause of the plaintiff's injury; and (4) the plaintiff was injured. *Dumont v. United States*, 80 F. Supp. 2d 576, 581 (D.S.C. 2000) (citing *Green v. Lilliewood*, 249 S.E.2d 910 (S.C. 1978)); *see also Brouwer v. Sisters of Charity Providence Hosps.*, 763 S.E.2d 200, 203 (S.C. 2014) (citations omitted); *David v. McLeod Reg'l Med. Ctr.*,

---

[6] Moreover, for purposes of § 1983, Defendants are not considered "persons" amenable to suit. *See Will*, 491 U.S. at 71 ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *see also Hafer v. Melo*, 502 U.S. 21, 26–27 (1991).

626 S.E.2d 1, 3–4 (S.C. 2006).

The plaintiff bears the burden of proof as to each element. *Dumont*, 80 F. Supp. 2d at 581. Generally, a "plaintiff must provide expert testimony to establish both the required standard of care and the defendants' failure to conform to that standard, unless the subject matter lies within the ambit of common knowledge so that no special learning is required to evaluate the conduct of the defendants." *David*, 626 S.E.2d at 4. Expert testimony generally is required to establish proximate cause in a medical malpractice case. *Bramlette v. Charter-Medical-Columbia*, 393 S.E.2d 914, 916 (S.C. 1990). The "expert testimony as to proximate cause must provide a significant causal link between the alleged negligence and the injuries suffered, rather than a tenuous and hypothetical connection." *Martasin v. Hilton Head Health Sys.*, 613 S.E.2d 795, 800 (S.C. Ct. App. 2005).

"Expert testimony is not required, however, to prove proximate cause if the common knowledge or experience of laypersons is extensive enough to determine the presence of the required causal link between the medical treatment and the patient's injury." *Bramlette*, 393 S.E.2d at 916–17. "When expert testimony is not required, the plaintiff must offer evidence that rises above mere speculation or conjecture." *Brouwer*, 763 S.E.2d at 204 (quoting *Hickman v. Sexton Dental Clinic, P.A.*, 367 S.E.2d 453, 455 (S.C. Ct. App. 1988)); *see also Fletcher v. Med. Univ. of S.C.*, 702 S.E.2d 372, 374 (S.C. Ct. App. 2010) (explaining that because "South Carolina does not recognize the doctrine of res ipsa loquitur," courts "are not permitted to speculate that misfortune was the result of negligence in the absence of any evidence as to how the physicians deviated from the standard of care").

Plaintiff has not produced a single document that establishes the applicable standard of care, that any Defendant failed to conform to that standard, or that any Defendant's alleged failure

13

to conform to the standard proximately caused Plaintiff's injuries. Plaintiff has not produced expert testimony as to the standard of care, any alleged failure to conform to the required standard, or that the alleged violation was a proximate cause of his injuries. Nor has Plaintiff presented a plausible argument that establishes that the alleged negligent acts "lie[ ] within the ambit of common knowledge and experience, so that no special learning is needed to evaluate the conduct of the defendant[s]." *See David*, 626 S.E.2d at 4. Because Plaintiff has not met the burden to proceed on a claim for medical malpractice under South Carolina law, Defendants are entitled to summary judgment on any purported claim for medical malpractice.[7]

### IV.     Defendants are entitled to qualified immunity.

Finally, Defendants are also entitled to qualified immunity from Plaintiff's claims. The doctrine of qualified immunity offers some protection to a government employee being sued in his or her individual capacity, as is the case with Defendants here. The Supreme Court has held that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Renn v. Garrison*, 100 F.3d 344, 349 (4th Cir. 1996).

---

[7] Defendants base their argument for dismissal of any purported medical malpractice claim on Plaintiff's failure to satisfy certain statutory prerequisites. ECF No. 34-1 at 16–17. However, the Fourth Circuit has indicated that a state requirement that litigants secure a certification from a medical expert before filing suit conflicted with and was supplanted by the Federal Rules of Civil Procedure. *See Pledger v. Lynch*, 5 F.4th 511, 518 (4th Cir. 2021); *see also Reid v. United States*, No. 22-CV-1687-SAL, 2024 WL 63869, at *5 (D.S.C. Jan. 5, 2024). While this basis alone is not sufficient to justify dismissal, a claim can adequately be dismissed on summary judgment "based on Plaintiff's failure to meet the burden of proof for medical malpractice under the substantive tort law of South Carolina." *Reid*, 2024 WL 63869, at *5. Here, because the undersigned finds Plaintiff has not met his burden of proof to establish a claim for medical malpractice, any such claim should be dismissed.

The threshold inquiry this Court must undertake in a qualified immunity analysis is whether Plaintiff's allegations, if true, establish a clear constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If a violation of a constitutional right in fact exists, qualified immunity nonetheless shields a prison official from liability, unless the violation was of a "clearly established right of which a reasonable person would have known." *Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003) (alterations omitted) (internal quotation marks omitted); *see also Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) ("A qualified immunity inquiry involves two steps. A court generally considers first, whether a constitutional violation occurred, and second, when the court finds such a violation, whether the right violated was clearly established at the time of the official's conduct." (internal quotation marks omitted)).

As set forth in detail above, Plaintiff has failed to establish an issue of material fact on any of his allegations of constitutional violations. Plaintiff has failed to demonstrate that any Defendant was deliberately indifferent to Plaintiff's serious medical need in violation of Plaintiff's Fourteenth Amendment rights as a detainee. Because Defendants did not violate Plaintiff's constitutional rights, they are also shielded from liability by qualified immunity.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment, ECF No. 34, be **GRANTED**, and that this case be **DISMISSED**.

The parties are referred to the Notice Page attached hereto.

Molly H. Cherry
United States Magistrate Judge

September 6, 2024
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).